We'll hear the next case. Wade v. Burns. Do we have counsel for the defendant? Yes. May it please the court. You may. My name is Anthony Green. I'm from the firm of William Spadafore in Schwartzburg. I'm here on behalf of the opponent. Now, what this case is about is the state of Connecticut's attempt to exercise jurisdiction over a federal program over the implementation and marketing of the Medicare Advantage Plan by a federal government. That would suggest that you would have been able to do this in plenty of time. So why do we get into anything else but just that you didn't do it in time? Your Honor, if this is decided as not being removable at this time, then the time to remove hasn't even begun to tick. So that is one point. But also, in the complaint itself, it's not clear that they're talking about his attempts to market Medicare Advantage Plans. It could be talking about attempts to market Medigap Plans or other health insurance plans. It doesn't have unequivocal facts. But there are enough facts that are the ones that you are saying make this a federal issue that were in the complaint. So if that is so, then why isn't that enough for you to look and say this is something that shouldn't be here? Because, Your Honor, there's an exception to the well-pleaded complaint rule when it comes to federal officer removal statutes. And the subjective information of the defendant, or in this case the respondent, is not taken into consideration. He removed based on information by his own investigation, by his own knowledge of the facts. The complaint itself doesn't provide those facts. What about the issue of the statute on its face as removal from a state court? Yes, Your Honor. With respect to that issue, the plain meaning statute or plain meaning rule doesn't mean that states get to decide the plain meaning of federal statutes. This is a federal statute. Well, we're going to decide what state court means. Why should it include this kind of state agency? Well, because eventually this, I think it should include the state agency. I know you think so, but the statute doesn't say so. It doesn't say so, but if you look at what the intent of the statute is. How do I know the intent of the statute? Well, we can look at the civil action definition, and it includes action or proceedings that are ancillary to what you might otherwise consider traditional state court actions. And this is a case that would eventually be reviewable by the Connecticut Superior Court. Do we even get to the intent unless we find, if we don't find ambiguity in the words of the statute? Well, I think to determine the plain meaning, you have to look at what you believe the meaning of the words are. You haven't cited anything in the legislative history. Now, we all know legislative history is dubious, but if you're going to attack what is the language of a statute, you've got to give us something. The only thing you give us is a very old case that says that some things that are courts are not courts for the purposes of this statute. But how does that help you to say that things that are not courts are courts for purposes of this statute? Well, with respect to federal officer removal jurisdiction, it's a very important public policy from the federal government. And if we allow the states to so easily frustrate it by bringing actions against federal officers in Connecticut court... And a statute could be passed to deal with that and say you can remove things from state agencies when some issues of federal... That's the second question. You say that there are, and that's why I have problems with timing, because you're saying that there are based on how you read this. But if it is such a terrible thing, the statute can be passed. They haven't passed one. But until then, we run the risk of there being 50 new commissioners overseeing a federal program. We run any number of risks until a statute is passed. We run the risk that I may cross the street improperly until there's a statute that tells me I can't do it. You know, that's life. But the policy issues in this case, I would say, are enough to find that. To cause us to write a statute when there ain't one? I think that the plain meaning does include something of this nature. And I think that if you really consider the policies and what you define as a civil action as any proceeding to the extent that it seeks a judicial order or subpoena or testimony or documents, that's what's happening here. So why should this be treated differently? Thank you. Thank you, Your Honor. We'll hear the other side. Good morning, Your Honors. James Cayley, Assistant Attorney General on behalf of the Connecticut Insurance Commissioner Wade. May it please the Court, moving first to Judge Calabrese's point that this removal was untimely. In my view, it's absolutely obvious that this was an untimely attempt to remove an agency civil action to federal court. Mr. Burns doesn't dispute that he was over the 30-day window. Instead, he claims that because removal was based on the federal officer removal statute and the commissioner's pleading did not provide or alert him to federal officer jurisdiction, that the removal clock was never triggered. However, looking at his notice of removal, at the record of page A32, in bold, it says federal question jurisdiction under 28 U.S.C. section 1331. Okay, so is that a basis for removal? Well, it certainly is. And look at paragraph 47 of that page in bold. The commissioner's claims necessarily raise a federal issue, to wit, preemption under federal law. The one overriding federal issue that predominates on the face of each count of the complaint. You're saying that the complaint itself, petitioner says, gives ground for removal. Absolutely, Your Honor. And if that is so, why didn't he do it within 30 days? Absolutely. It's crystal clear. And to the second issue. I'm sorry, Your Honor? Is there an issue as to whether the pleading on its face, I mean, the words of the statute, does it enable the defendant to intelligently ascertain removability? The argument is that it wasn't clear, which kind of undercuts his argument on the merits. Absolutely. But why, I mean, Judge Haidt went ahead and dealt with it. Judge Haidt, from Judge Haidt's perspective, certainly the federal preemption issue was not bona fide because there is an exception for state licensure. The point of the timeliness. Yes, Your Honor. Can you tell right away that there is federal jurisdiction, or does it take you some time to intelligently ascertain it? And if it takes you some time, does that give him some additional time on the 30-day clock? Your Honor, it doesn't take any time. Again, going to paragraph 47. Your argument is that no one looking at this could intelligently ascertain that there's federal office or jurisdiction. No. And, Your Honor, Mr. Wade claims that it's obvious, too. Look what he says at paragraph 47. On the face of each count of the complaint, he says that there's federal preemption. So if Mr. Wade is saying that there's an obvious federal preemption issue here, then certainly he can't stand here and deny it. You're in the difficult position of saying that every one of these arguments is a bad argument. But if it were a good argument, it would be obvious on its face. That's right, Your Honor. Facially looking at the complaint, when we see that there's a Medicare-related, this involves Medicare-related insurance products, we don't see beyond that, which is there's a carve-out in Medicare for state licensure. It's only after we do the research that we find that there's not a jurisdictional issue here. Now, just briefly, because he raised it, we have a plain meaning rule issue with respect to the meaning of the word state court that's used in the federal officer removal statute. And counsel for Mr. Burns is at length arguing that the court should have considered certain federal interests in making that plain meaning rule analysis. But we don't do that. We just simply look at whether or not the word used by the legislature is clear and unambiguous and whether or not the term is used within the statutory scheme in a coherent and consistent manner. And that is, we don't look at any interests. We don't look at any interests unless this court were to choose the functional approach in examining the meaning of the word state court. And because it wasn't in my brief, I just want to, to the extent the court even reaches this, there is a case from the Second Circuit from 1985 entitled Friends of the Earth v. Consolidated Rail Corp. It's 768F2-5762, Second Circuit, 1985. And in that case, in construing a different provision of the Clean Water Act, the court specifically rejected the functional approach. And Volkswagen v. Puerto Rico, which is the First Circuit decision, which speaks at length and adopts this functional approach, this court specifically rejected the functional approach in construing the term state court in that statute. Other than that, I believe I've addressed the arguments raised by Mr. Burns' counsel. I'm happy to leave the remainder to my papers. If you have any questions, I'd be certainly interested in answering them at this time. Thank you. Thank you, sir. We'll hear the rebuttal. Thank you, Your Honor. I just want to make the point, first of all, that removability and timeliness are two separate issues. It could be removable, but the time to remove could not have started ticking. That is possible. There are cases in which that's recognized. Why was this timely? Why was the removal timely? I don't believe that the clock to remove has ever started. Why didn't it start? In your removal papers, you identify the grounds for removal. Why wasn't that apparent from the first day you saw the pleading? That was based on his application of his own subjective knowledge and his own research. It wasn't based on anything that was said in the complaint. You said, in the face of every count. Correct. Mr. Burns, at the time, was pro se, so perhaps he phrased it not as artfully as it should have been. He should have said, I didn't see it? He was saying, it's right here. Because that's what it turned out the allegations were all about, was about his marketing of Medicare Advantage plans. It's the federal program making it a federal question and removable. All right. Thank you. Thank you, Your Honor.  Thank you, Your Honor.